STEVEN P. PETERSEN (Illinois Bar No. 6196793)
spetersen@leydig.com
AARON R. FEIGELSON (Illinois Bar No. 6279091)
afeigelson@leydig.com
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601
Telephone: (312) 616-5600
Facsimile: (312) 616-5700

JOHN B. SHELY (Texas Bar No. 18215300)
johnshely@andrewskurth.com
J. SCOTT CAROTHERS (Texas Bar No. 03834100)
scottcarothers@andrewskurth.com
ANDREWS KURTH LLP
600 Travis Street, Suite 4200
Houston, TX 77002-3090
Telephone: (713) 220-4200
Facsimile: (713) 220-4285

Attorneys for Defendants
AETNA INC. and AETNA RX
HOME DELIVERY, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE KATZ INTERACTIVE CALL PROCESSING PATENT LITIGATION | CASE NO. 2:07-ML-1816 RGK (FFMx) |
| This pleading relates to:<br><br>Ronald A. Katz Technology Licensing, LP v. Aetna Inc., et al.<br>2:07-CV-2213 RGK (FFMx) | **AETNA DEFENDANTS' OBJECTIONS TO THE DISCOVERY SPECIAL MASTER'S ORDER NO. 56 RE KATZ'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS**<br><br>**DISCOVERY MATTER**<br><br>Magistrate Judge Frederick F. Mumm<br><br>Objections to Order Entered by Discovery Special Master Martin Quinn |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 1

A. RAKTL's Discovery Requests and the Meet and Confer Process .......... 1

B. Discovery Special Master's Order No. 56 .......... 2

III. ARGUMENT .......... 2

A. Standard of Review .......... 3

B. The Discovery Special Master Erred by Ruling RAKTL's Requests for Admissions Did Not Ask for Legal Conclusions .......... 3

C. The Discovery Special Master Erred by Failing to Consider Persuasive Law of this Court Regarding Multi-subpart Interrogatories .......... 5

D. The Discovery Special Master Erred by Awarding Sanctions .......... 7

1. Aetna's Responses and Objections Were Substantially Justified .......... 8

2. RAKTL Could Have Prevented the Need for a Hearing by Cooperating During the Meet and Confer Session .......... 9

IV. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**CASES**

*A.B. Dick Co. v. Underwood Typewriter Co.*, 235 F. 300 (S.D.N.Y. 1916) .......... 3

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, No. 1:00-CV00113, 2002 U.S. Dist. LEXIS 6199 (W.D. Va. March 18, 2002) .......... 6

*Benas v. Baca*, No. 00-011507, 2003 U.S. Dist. LEXIS 27440 (C.D. Cal. July 16, 2003) .......... 6

*Chapman v. Cal. Dept. of Ed.*, No. 01-1780, 2002 WL 32854376 (N.D. Cal. February 6, 2002) .......... 6, 7

*In re: Katrina Canal Breaches Consol. Litig.*, No. 05-4182, U.S. Dist. LEXIS 51042 (E.D. La. June 27, 2007) .......... 6

*Rodman Chem. Co. v. E.F. Houghton Co.*, 233 F. 470 (E.D. Pa. 1916) .......... 3

*Safeco of Am. v. Rawstron*, 181 F.R.D. 441 (C.D. Cal. 1998) .......... 5, 6, 7

*Stevens v. Federated Mut. Ins. Co.*, No. 5:05-CV149, 2006 U.S. Dist. LEXIS 51001 (N.D.W. Va. July 25, 2006) .......... 6

*Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100 (D. Del. 2002) .......... 3

*Zamora v. D'Arrigo Bros. Co.*, No. 04-00047, U.S. Dist. LEXIS 21208 (N.D. Cal. April 11, 2006) .......... 6

**STATUTES**

35 U.S.C. § 112(6) .......... 4

**RULES**

Fed. R. Civ. P. 33(d) .......... 1, 9

Fed. R. Civ. P. 37(a)(5)(A). .......... 7, 8, 9

Fed. R. Civ. P. 53(f)(3) .......... 3

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 53 and the Court's August 28, 2007 Order re Appointment of Discovery Special Master (D.I. 180), Defendants Aetna Inc. and Aetna Rx Home Delivery, LLC (collectively "Aetna") respectfully submit these objections to the Discovery Special Master's Order No. 56 ("DSMO No. 56") (D.I. 233) granting-in-part Ronald A. Katz Technology Licensing, LLP's ("RAKTL") motion to compel supplementation of responses to interrogatories and requests for admission, and to the resulting sanctions imposed by the Discovery Special Master.

RAKTL's Requests for Admission call for legal conclusions on unconstrued patent claim terms. Moreover, RAKTL's Interrogatory No. 25 consists of multiple subparts, requiring sixteen distinct answers. Aetna's objections to these discovery requests are grounded in law and fact, as was Aetna's reference to documents pursuant to Fed. R. Civ. P. 33(d) with respect to Interrogatory No. 24.

## II. BACKGROUND

### A. RAKTL's Discovery Requests and the Meet and Confer Process

On March 24, 2008, RAKTL served its First Set of Requests for Admission (the "RFAs") and Third Set of Interrogatories on the Aetna Defendants (D.I. 219, Exhs. A, B). Aetna timely responded to the RFAs and Interrogatories on April 23, 2008 (D.I. 219, Exhs. C, D). Dissatisfied with Aetna's responses, RAKTL requested a meet and confer session, which was held telephonically on April 28, 2008. Although some issues were resolved during the conference call, other issues were not. In particular, Aetna declined to supplement its responses to Interrogatories Nos. 24 and 25 and its responses to the RFAs. RAKTL indicated it would not provide any clarification as to terms used in Interrogatory No. 24, nor would it provide specific examples of deficiencies with Aetna's response to that interrogatory.

**B. Discovery Special Master's Order No. 56**

Following oral argument on the issue, on May 12, 2008 the Discovery Special Master entered DSMO No. 56 granting-in-part RAKTL's motion for supplemented responses to the RFAs and Interrogatories Nos. 24 and 25, but denying RAKTL's request for costs to complete a 30(b)(6) deposition (D.I. 233 at 4). The Discovery Special Master sanctioned Aetna by ordering it to pay RAKTL's reasonable attorney's fees for bringing its motion. (*Id.* at 4). On May 16, 2008, the Discovery Special Master approved fees in the amount of $3,800, including five hours of a partner's time at $610/hr to draft the motion, and two hours of an associate's time at $375/hr for arguing the motion. (Exh. A).

## III. ARGUMENT

Aetna objects to DSMO No. 56 as set forth below, and its objections should be sustained for several reasons. On the facts, DSMO No. 56 is incorrect in that it states that RAKTL's Requests for Admission are dealing with "entirely real world facts and evidence." (D.I. 233 at 4). Instead, the RFAs are clearly attempts to force Aetna into committing to a claim construction position – a legal conclusion – through the guise of a discovery request. With respect to Interrogatory No. 24, DSMO No. 56 does not account for RAKTL's failure (prior to the hearing) to provide needed clarification that would have enabled more detailed responses, despite repeated invitations from Aetna.

On the law, DSMO No. 56 does not consider decisions of this and other courts that are on all fours with Aetna's position in holding that an interrogatory asking for the detailed "basis for denial" of RFAs are, in fact, multiple interrogatories under Fed. R. Civ. P. 33.

Finally, DSMO No. 56 wrongly awards sanctions of attorney fees. In light of Aetna's fully supported position on the merits, and RAKTL's unclean hands in refusing to clarify interrogatory language, such an imposition of sanctions is inappropriate. For

these and the following reasons, Aetna's objections to DSMO No. 56 should be sustained.

**A. Standard of Review**

This Court reviews all rulings made by the Discovery Special Master *de novo*. Fed. R. Civ. P. 53(f)(3); (MDL D.I. 180 at 5).

**B. The Discovery Special Master Erred by Ruling RAKTL's Requests for Admissions Did Not Ask for Legal Conclusions**

In its responses and its letter brief to the Special Master, Aetna objected to RAKTL's RFAs as improperly seeking legal conclusions. RAKTL's RFAs include terms from patent claims currently asserted against Aetna, and, in fact, amount to little more than requests to admit legal conclusions regarding the meaning of those terms. During the oral hearing, however, the Special Master referred to the terms as "plain English"[1], and in DSMO No. 56 the RFAs were described as "simply worded." In reality, however, RAKTL is asking (and the Special Master is now ordering) Aetna to admit to the construction of patent claims "through the guise" of RFAs. *Rodman Chem. Co. v. E.F. Houghton Co.*, 233 F. 470, 473 (E.D. Pa. 1916).

It is well established that requests that seek legal conclusions are not allowed under Rule 36. *See*, *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002). While *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) made clear that patent claim interpretation is a matter of law, courts have recognized this principle in the context of discovery requests in patent litigation for nearly a century. *See, e.g., Rodman Chem. Co.,* 233 F. at 473; *A.B. Dick Co. v. Underwood Typewriter Co.*, 235 F. 300, 301 (S.D.N.Y. 1916). For example, in *A.B. Dick* the court found objectionable the patentee's request for defendant

---

[1] There is apparently no transcript of the hearing. RAKTL, the requesting party, did not ensure that a qualified court reporter was attending the hearing, in violation of the Court's August 28, 2007 Order establishing the Discovery Special Master's role for this case. (MDL D.I. 180 at 3).

to admit its products contained particular claim elements. *Id.* ("In a case like this I think interrogatories[2] in the language of the claims are objectionable. There may well be a difference of opinion, for instance, as to what is a 'fibrous material,' whether a sheet is 'impregnated,' whether the substance is 'colloidal.'")

RAKTL's RFAs are no different. For example, RFA No. 12 asks Aetna to admit that its systems "include structure that interfaces with the public telephone network." Notably, claim 46 of the '309 patent and claim 31 of the '863 patent – both still asserted against Aetna – are each means-plus-function claims under 35 U.S.C. § 112(6), and each contains an element recited as an "interface structure" with particular characteristics. More importantly, the meaning of the term "interface structure" is disputed, and that term was not addressed in the Court's *Markman* ruling of February 21, 2008. Likewise, claim 46 of the '309 patent, also still asserted against Aetna, requires a "voice generator structure…to provide vocal operating instructions", which is the subject of RAKTL's RFA No. 13 ("Admit that the ACCUSED SYSTEMS include structure that provides verbal prompts and messages to callers.")

Additional examples show RAKTL's pervasive use of inappropriate RFAs. Claim 43 of the '863 patent requires a "plurality of call distributors…at different geographic locations." RFA No. 16 asks Aetna to admit that its systems "include call distributors at multiple geographic locations." Similarly, Claim 57 of the '120 patent, claim 19 of the '285 patent and claim 31 of the '863 patent, all still asserted against Aetna, require DNIS "provided automatically" or "automatically provided" from a telephone communications facility/system. RFA No. 1 asks Aetna to admit that "information related to the telephone number dialed by the caller is automatically provided to the ACCUSED SYSTEMS."

---

[2] Although the *A.B. Dick* and *Rodman Chemical* courts speaks of "interrogatories", they are more akin to what today are known as "requests for admission." These "interrogatories" were propounded under Former Equity Rule 58, an ancestor of today's Rule 36. *See*, Barry L. Grossman & Gary M. Hoffman, *Patent Litigation Strategies Handbook,* 186 (BNA Books 2000).

These terms, taken directly from the claims at suit, have not yet been construed by the Court. The meaning of these terms is disputed, in some instances, hotly. Aetna should not be forced to admit a construction of them, thereby giving legal conclusions, in the context of requests for admission.

### C. The Discovery Special Master Erred by Failing to Consider Persuasive Law of this Court Regarding Multi-subpart Interrogatories

In its responses and its letter brief to the Special Master, Aetna objected to RAKTL's Interrogatory No. 25 as including multiple subparts. The August 28, 2007 Discovery Case Management Order ("DCMO") makes clear that each party is limited to only 25 interrogatories (MDL D.I. 179 at 19). Thus, Aetna contended RAKTL had exceeded the court-imposed limit.

The case law of this court is clear. In *Safeco of America v. Rawstron*, 181 F.R.D. 441 (C.D. Cal. 1998), the court dealt with a defendant's interrogatories that asked the plaintiff to provide the bases for each of its denials to defendant's RFAs. The court walked through a detailed analysis on the nature of interrogatories and RFAs discussing how a manipulative party could use these tools to make an end-run around Rule 33:

> "Allowing service of an interrogatory which requests disclosure of all of the information on which the denials of each of 50 requests for admissions were based, however, essentially transforms each request for admission into an interrogatory. This is not the purpose requests for admissions were intended to serve, and because Rule 36 imposes no numerical limit on the number of requests for admissions that may be served, condoning such a practice would circumvent the numerical limit contained in Rule 33(a).
>
> … Accordingly, an interrogatory that asks the responding party to state facts, identify witnesses, or identify documents supporting the denial of each request for admission contained in a set of requests for admissions usually should be construed as containing a subpart for each request for admission contained in the set. Therefore, each of defendant's requests for admissions as to which a response to the three interrogatories would be required if the request were not admitted should be treated as a separately countable subpart of each of the three interrogatories."

*Safeco*, 181 F.R.D. at 445.

Because defendants' interrogatories contained multiple subparts, each was treated individually by the *Safeco* court toward the numerical limitations as set forth in Rule 33 and, because those limits were exceeded, the plaintiff was not required to answer the interrogatories. *Id.* at 448. The *Safeco* court further called for future courts to adopt "a strong presumption that each underlying request for admission constitutes a separately countable subpart." *Id.* at 446 (emphasis added).

The strength of *Safeco*'s holding and reasoning is evident not only from the face of the opinion itself, but also from its embracement by this and other courts. *Safeco* has been cited positively in numerous district courts. *See, e.g., Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, No. 1:00-CV00113, 2002 U.S. Dist. LEXIS 6199, at *7-8 (W.D. Va. March 18, 2002)(RFA-based interrogatory contained multiple subparts); *Benas v. Baca*, No. 00-011507, 2003 U.S. Dist. LEXIS 27440, at *6 (C.D. Cal. July 16, 2003)(RFA-based interrogatory contained multiple subparts); *Stevens v. Federated Mut. Ins. Co.*, No. 5:05-CV149, 2006 U.S. Dist. LEXIS 51001, at *14-15 (N.D.W. Va. July 25, 2006)(RFA-based interrogatory contained multiple subparts); *Zamora v. D'Arrigo Bros. Co.*, No. 04-00047, U.S. Dist. LEXIS 21208, at *9-10 (N.D. Cal. April 11, 2006)(multiple subparts allowed because numerical limited on interrogatory was not exceeded); *In re: Katrina Canal Breaches Consol. Litig.*, No. 05-4182, U.S. Dist. LEXIS 51042, at *241-242 (E.D. La. June 27, 2007).

During oral argument, RAKTL cited a case from the Northern District of California, *Chapman v. California Department of Education*, No. 01-1780, 2002 WL 32854376 (N.D. Cal. February 6, 2002), that purportedly distinguished *Safeco*. But *Chapman* follows *Safeco*, as well: "If the interrogatory relates to distinct and separate requests for admission, the interrogatories should be treated as the same number of subparts as there are requests for admission." *Chapman*, 2002 WL 32854376 at *2. The

court in *Chapman* worked around this problem by *sua sponte* granting leave for the plaintiff to serve additional interrogatories. *Id.*

The facts in the case at bar bear remarkable similarity to the facts of *Safeco*. Here, RAKTL has asked Aetna to "describe *in detail* the basis for [its] denial" of each RFA that it has denied "in whole or in part". (D.I. 219, Exh. B at 8, emphasis added). There can be no question that RAKTL's Interrogatory 25 is effectively up to sixteen separate interrogatories, and there can be no rebuttal to *Safeco*'s presumption on this point.

DSMO No. 56 ignores *Safeco* and, in fact, runs directly counter to it. Aetna's objections to Interrogatory No. 25 are not "utterly groundless" or "absurd" (D.I. 233 at 4) – in fact, they are well-grounded, and have been adopted by several other district courts. Moreover, unlike as in *Chapman*, the Special Master did not (nor is it within the scope of his duties to) give leave for RAKTL to serve additional interrogatories, above the numerical limits of the DCMO and Rule 33.

The Special Master erred by not considering *Safeco* and by overruling Aetna's objections. Aetna respectfully requests that Interrogatory No. 25 and its subparts be stricken. Aetna further requests that its supplemental responses to Interrogatory No. 25, recently served for compliance with DSMO No. 56, be deemed withdrawn *nunc pro tunc*.

**D. The Discovery Special Master Erred by Awarding Sanctions**

In DSMO No. 56, the Discovery Special Master awarded attorneys' fees to RAKTL as a sanction for "discovery misconduct." (D.I. 233 at 4). However, Rule 37 prevents the award of costs and attorneys fees if "the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

Aetna's responses and objections to RAKTL's discovery requests were substantially justified. Moreover, RAKTL's own failure to meaningfully participate in the meet-and-confer is largely responsible for the hearing that led to DSMO No. 56.

Under such circumstances, an award of costs and attorney's fees is inappropriate under Rule 37.

**1. Aetna's Responses and Objections Were Substantially Justified**

As described in detail above, Aetna's objections and responses to the RFAs were based largely on the improper nature of those RFAs in seeking legal conclusions with respect to patent claim interpretation. Similarly, Aetna's objections to Interrogatory No. 25 were well-founded on law of this court. It is clear that an imposition of sanctions resulting from Aetna's response to these requests would not be appropriate under Rule 37(a)(5)(A)(ii).

With respect to Interrogatory No. 24, Aetna's response was also substantially justified. Interrogatory No. 24 reads:

> Describe in detail the relationship between Aetna and PharmaCare, including whether and how Aetna manages or otherwise exercises control over any aspect of the Aetna Rx Home Delivery system operated by PharmaCare and any benefit that Aetna receives from the operation of that Aetna Rx Home Delivery system.
> (D.I. 219, Exh. B).

In response, Aetna provided an answer pursuant to Rule 33(d) that referenced the relevant contracts that define the relationship between Aetna and PharmaCare (and PharmaCare's predecessor, Eckerd Health Services). These contracts total 170 pages, and contain all relevant details of the parties' relationship.[3] For example, the contracts detail the type and frequency of reports that PharmaCare was to provide Aetna, how often representatives of the parties should meet to cooperate on ongoing issues, guarantees of services levels to be provided, etc. An entire section of one contract pertains exclusively to "Change Requests" that detail the terms under which Aetna may

---

[3] The contracts are attached as Exhibits B, C, D, E and F. Aetna is concurrently submitting an *ex parte* application to file these exhibits under seal, pursuant to the Protective Order in this case.

request changes of PharmaCare/Eckerd. (Exh. B at AETNAP117461-462, Exh. C at AETNAP117478)

Rule 33(d) allows a party to refer to business records if the answer to the interrogatory "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records…and if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). In this case, because the relationship between Aetna and PharmaCare is entirely defined within the contracts, RAKTL could just as easily have found the information it was looking for by reviewing those contracts. In fact, RAKTL had a better idea than Aetna of precisely what information it was seeking, as discussed in the following section.

Aetna's invocation of Rule 33(d) was entirely appropriate. Like its responses and objections to Interrogatory No. 25 and the RFAs, Aetna's response to Interrogatory No. 24 was substantially justified. Sanctions are not appropriate for Aetna's responses and objections to RAKTL's requests.

**2. RAKTL Could Have Prevented the Need for a Hearing by Cooperating During the Meet and Confer Session**

Sanctions are also not appropriate when "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(5)(A)(i). In this case, Aetna gave RAKTL multiple opportunities to clarify its interrogatories during the April 28, 2008 meet and confer session, but RAKTL did not offer any constructive assistance to Aetna.

For example, with respect to Interrogatory No. 24, Aetna had objected and sought clarity on the vague term "benefit" as used by RAKTL. But during the conference, RAKTL refused to provide insight as to what was intended by that term, instead stating its belief that the term "spoke for itself." (D.I. 224, Feigelson Decl. at ¶ 7). Subsequently, RAKTL filed its Letter Brief with the Discovery Special Master, in which it *then* chose to give examples of what was meant by "benefit" (D.I. 219 at 2)("i.e., convenience, enhanced reputation, income").

Similarly, Aetna could not understand RAKTL's insistence on explanation beyond the contracts referred to under Rule 33(d). During the meet and confer session, Aetna specifically asked RAKTL to provide even one example of information that was sought by Interrogatory No. 24 but was not contained in the contracts. RAKTL could not point to a single instance. (D.I. 224, Feigelson Decl. at ¶ 8). But in its Letter Brief, RAKTL stated for the first time that "the contracts do not, for example, explain how *in practice* Aetna has exercised management or control over this system, nor do they describe the benefits…" (D.I. 219 at 2, emphasis in original).

Had RAKTL provided these clarifications earlier, Aetna may have supplemented its responses or been able to reach some compromise with RAKTL. As it occurred, however, RAKTL's unwillingness to cooperate left Aetna no choice but to stand by its objections and responses as served. Aetna should not be sanctioned for RAKTL's refusals.

## IV. CONCLUSION

Aetna's responses to RAKTL's discovery requests were appropriate under the DCMO, the Federal Rules, and established law. The Discovery Special Master erred in finding otherwise, and in awarding sanctions resulting from Aetna's perceived misconduct. Aetna respectfully requests that DSMO No. 56 be reversed, and not adopted by the Court. Aetna further requests that its supplemental responses to the RFAs and Interrogatories Nos. 24 and 25, served May 21, 2008, be deemed withdrawn *nunc pro tunc*.

Dated this the 22nd day of May, 2008.

By: /s/Aaron R. Feigelson
STEVEN P. PETERSEN
AARON R. FEIGELSON
LEYDIG, VOIT & MAYER, LTD.

Attorneys for Defendants
AETNA INC.
AETNA RX HOME DELIVERY, LLC